DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |  |
|---|---|---|
| JUDITH KROMENHOEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 2012-25 |
| v. | ) | |
| | ) | |
| COWPET BAY WEST CONDOMINIUM | ) | |
| ASSOCIATION; THE BOARD OF THE | ) | |
| COWPET BAY WEST CONDOMINIUM | ) | |
| ASSOCIATION; MAX HARCOURT, in | ) | |
| his personal capacity; ALFRED | ) | |
| FELICE; LANCE TALKINGTON; ROBERT | ) | |
| COCKAYNE; and VINCENT VERDIRAMO | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ATTORNEYS:

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
    *For Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
        *For Cowpet Bay West Condominium Association, Ed Wardwell,*
        *Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler,*
        *Doug Rebak, Robert Cockayne, Vincent Verdiramo, and Herb*
        *Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
        *For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 2

Miami, FL
    *For Alfred Felice.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo ("Verdiramo"), Robert Cockayne ("Cockayne"), Lance Talkington ("Talkington"), the Cowpet Bay West Condominium Association (the "Association"), and the Board of the Cowpet Bay West Condominium Association (the "Board") (collectively, the "Defendants").

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Judith Kromenhoek ("Kromenhoek") owns a unit in the Cowpet Bay West Condominium complex ("Cowpet"), a condominium community located on St. Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association ("the Association") was formed under the Condominium Act of the Virgin Islands (the "Condominium Act"), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is

---

[1] According to the Condominium Act,

    The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 3

comprised of all of the unit owners in the Cowpet condominium

community. Association members purchase their units subject to

the Association's Declaration,[2] Bylaws, and its Rules and

Regulations.[3]

Association members elect a Board of Directors ("the

Board"). The Board is made up of seven Association members. The

Bylaws provide that the Board has

> the powers and duties necessary for the
> administration of the affairs of the Condominium
> and may do all such acts and things except as by
> law, by the Declaration, or by [its] By-Laws may
> not be delegated to the Board of Directors by
> the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of

Rules and Regulations by the Board. At all relevant times, the

---

[2] "'Declaration' means the instrument by which the property is submitted to
the provisions of this chapter, as hereinafter provided, and such declaration
as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and
> the administrative rules and regulations adopted pursuant
> thereto, as either of the same may be lawfully amended from time
> to time, and with the covenants, conditions and restrictions set
> forth in the declaration or in the deed to his apartment. Failure
> to comply with any of the same shall be ground for an action to
> recover sums due, for damages or injunctive relief or both
> maintainable by the manager or Board of Directors on behalf of
> the Association of Apartment Owners or, in a proper case, by an
> aggrieved apartment owner.

28 V.I.C. § 906.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 4

Rules and Regulations for Association members provide the

following:

> Dogs and farm animals are prohibited. Owners
> will be fined as specified by the Board of
> Directors. The Association may require removal
> of any animal when it becomes bothersome to
> others or is deemed by the Association to be
> unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about December 15, 2010, Stansford S. Sutherland

("Sutherland"), "a licensed psychologist wrote a letter stating

that he was treating Kromenhoek and that she was diagnosed with

Anxiety Disorder . . . ." (Second Am. Compl. ¶ 30, Civil No.

2012-25, ECF No. 94.) In his letter, the psychologist stated

"that he has prescribed the use of an emotional support animal,

dog or other, to alleviate her symptoms and that such emotional

support animal was necessary." (*Id.*)

Kromenhoek owned a dog named Oliver. Kromenhoek submitted

information about her dog's qualification as an emotional

support animal to Louanne Schechter ("Schechter"), Cowpet's

office manager, and included the letter from Sutherland.

Thereafter, members of the Board held a public meeting

during which the issue of service dogs was discussed. Kromenhoek

alleges that Max Harcourt ("Harcourt"), then President of the

Association, shared the content of her documents with some of

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 5

the Association members. (Second Am. Compl. at ¶ 53, Civil No. 2012-25, ECF No. 94.)

Subsequently, discussions on Kromenhoek's pet ownership appeared on an Internet web log, the Cowpet Bay Blog ("the blog"). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.)

Kromenhoek alleges that, on or about October 28, 2011, Harcourt e-mailed a letter addressed to her e-mail address as well as to Talkington's e-mail address. The letter stated that Kromenhoek had violated the "no dogs" policy contained in the Rules and Regulations. The letter also requested that Kromenhoek submit an application for a reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Kromenhoek, who were in violation of the "no dogs" policy. Thereafter, in February, 2012, the Association voted to add the "no dogs" policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals.

Kromenhoek initiated this action against Cowpet on April 9, 2012. Her complaint has twice been amended. Kromenhoek's complaint contains the following claims: Count One alleges a violation of the Fair Housing Act ("FHA"), 42 U.S.C. §

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 6

3604(f)(3)(b) against the Association and the Board; Count Two

alleges a violation of the FHA, 42 U.S.C. § 3617 against

Harcourt; Count Three alleges a violation of the FHA, 42 U.S.C.

§ 3617 against the Association and the Board; Count Four alleges

a violation of the FHA, 42 U.S.C. § 3617 against Alfred Felice

("Felice"); Count Five alleges a violation of the FHA, 42 U.S.C.

§ 3617 against Talkington; Count Six alleges a violation of

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12188

against the Association and the Board; Count Seven alleges the

Board exceeded its authority; Count Eight alleges that the

February 2012 Bylaws Amendment is void; Count Nine alleges

negligence against the Association and the Board; The next

count, also labeled as "Count Nine" in the complaint, alleges

intentional infliction of emotional distress against Felice;

Count Ten alleges civil conspiracy against all Defendants; Count

Eleven alleges *prima facie* tort against all Defendants; Count

Twelve alleges defamation and slander *per se* against the

Association, the Board, Felice, Harcourt, and Talkington; Count

Thirteen alleges Negligent Infliction of Emotional Distress and

Intentional Infliction of Emotional Distress against all

Defendants except Felice; Count Fourteen[4] alleges Invasion of

---

[4] This count is actually labeled, "Count IVX." Though the Roman numerals for
this count do not, in fact, equate to "fourteen," it is clear that they were

Privacy – Public Disclosure of Private Facts against the

Association and the Board; Count Fifteen[5] alleges Invasion of

Privacy – Public Disclosure of Private Facts against Harcourt

and Talkington; Count Sixteen alleges Invasion of Privacy –

False Light against all Defendants except Verdiramo and

Cockayne; Count Seventeen alleges Invasion of Privacy against

the Board, the Association, Harcourt, and Talkington; and Count

Eighteen alleges Negligence Per Se/Legal Malpractice against

Vincent Verdiramo.

During the pendency of this litigation, Harcourt passed

away. Barbara Walters, who had brought the same claims as

Kromenhoek against the same defendants, also passed away during

the course of litigation.

The Board and the Association filed a motion for summary

judgment seeking judgment on Counts One, Three, Six, Seven,

Eight, Thirteen, Fourteen, and Seventeen of the second amended

complaint. Cockayne and Verdiramo filed motions for summary

judgment seeking judgment on Count Thirteen of the second

amended complaint. Talkington filed a motion for summary

judgment seeking judgment on Counts Five, Eleven, Thirteen,

Fifteen, Sixteen, and Seventeen of the second amended complaint.

---

intended to.
[5] Similarly, this count is actually labeled, "Count VX."

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 8

Finally, a motion for summary judgment was filed by an attorney claiming to represent Harcourt.

The Court held a hearing on the Defendants' motions for summary judgment on Kromenhoek's claims on May 27, 2014. Following a lengthy hearing, at which evidence was presented and argument heard, the Court granted the Association and Board's motion for summary judgment and Talkington's motion for summary judgment on Kromenhoek's claims. The Court then dismissed for lack of jurisdiction all of Kromenhoek's remaining claims against the defendants, other than the claims pending against Felice and Harcourt. The Court took under advisement all of Kromenhoek's claims against Felice and Harcourt, as both defendants are deceased. The Court also dismissed the claims brought by Barbara Walters in the parallel case. Following the hearing, the Court indicated to the parties that a memorandum opinion documenting its rationale would be forthcoming.

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

## III. <u>ANALYSIS</u>

In considering whether the Defendants have met their burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law, the Court may consider the pleadings, the discovery and disclosure materials

on file, and any affidavits. *See* Fed. R. Civ. P. 56(c). In

support of their motions, the defendants have submitted

affidavits, emails and other documents provided in discovery,

declarations, and the pleadings.

## A. Count One: Violation of FHA 42 U.S.C. § 3604(f)(3)(b) against the Association and the Board

In Count One, Kromenhoek alleges that the Board and the

Association violated the Fair Housing Act ("FHA") by refusing to

make reasonable accommodations for her alleged disability. The

Fair Housing Act ("FHA"), passed by Congress as Title VIII of

the Civil Rights Act of 1968, prohibits housing discrimination

on the basis of, *inter alia*, race, gender, and national origin.

42 U.S.C. § 3601, *et seq*. Under the Fair Housing Act Amendment

("FHAA"), which Congress passed in 1988 to extend the coverage

of the FHA to include people with disabilities, it is unlawful:

> To discriminate against any person in the terms,
> conditions, or privileges of sale or rental of a
> dwelling, or in the provision of services or
> facilities in connection with such dwelling, *because
> of a handicap* of-
>
> (A)  that person; or
>
> (B)  a person residing in or intending to reside in
>      that dwelling after it is sold, rented, or made
>      available; or
>
> (C)  any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added). The FHAA does not,

however, "extend a *preference* to handicapped residents," *United*

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 11

*States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994) (emphasis added). As such, accommodations that go beyond affording a disabled individual "an equal opportunity to use and enjoy a dwelling" are not mandated by the FHAA. *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 605 (4th Cir. 1997).

Under 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. California Mobile Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (citations omitted).

To prevail on a claim under 42 U.S.C. § 3604(f)(3)(b), a plaintiff must show each of the following elements:

> (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation.

42 U.S.C. § 3604(f)(3)(B); *Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.*, 347 Fed. App'x 464, 467 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201,

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 12

1218-19 (11th Cir.2008)); *DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *HUD v. Riverbay Corp.*, HUDALJ 02-93-0320-1 (Sept. 8, 1994).

In order to make a claim under the FHA, a plaintiff "must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA." *United States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir. 2011). "[F]or a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable landlord to make appropriate inquiries about the possible need for an accommodation." *Id.* at 876 (internal quotations omitted).

Once an accommodation is formally requested, the plaintiff may only bring a claim under the FHA if that accommodation is denied. Denial can be explicit or constructive. "We acknowledge that injury may result when a housing provider unreasonably delays responding to a request for an accommodation and that such a delay may amount to a denial." *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay in responding to a request for accommodations does not

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 13

constitute denial where the denial does not deprive the disabled

person of the accommodation. *Id.* at 623.

The Board and the Association have moved for summary

judgment on Count One.  The Association and the Board do not

dispute that Kromenhoek is disabled or handicapped within the

meaning of the FHA or that the accommodation sought was

necessary to afford Kromenhoek an opportunity to use and enjoy

her dwelling. Rather, in support of their motion for summary

judgment, the Board and the Association assert that Kromenhoek

did not request an accommodation within the meaning of the FHA

until March, 2012, and that at no time was Kromenhoek denied the

accommodation sought.

The Board and the Association assert that Kromenhoek

requested an accommodation for the first time in March of 2012.

In support of that contention, the Board and the Association

have submitted a declaration by Sharon Koehler ("Koehler"), a

member of the Board during the time at issue. The Board and the

Association also direct the Court to a copy of the report issued

by the United States Department of Housing and Urban Development

("HUD"). Finally, the Board and the Association have also

provided a letter from the President of the Board in 2012, Ed

Wardall, granting Kromenhoek's exemption.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 14

Koehler declares that Kromenhoek provided documents, or "paperwork," to Louanne Schechter ("Schechter") in 2011. (Decl. Kohler.) Kohler does not state what this "paperwork" consisted of. The affidavit of Schechter sheds some light on what was contained in the "paperwork" filed in 2011. Schechter testifies that Kromenhoek gave Schechter a copy of a letter from Kromenhoek's doctor, prescribing an emotional support animal, and certifications for Oliver. Kohler avers that Kromenhoek instructed Schechter not to share Kromenhoek's paperwork with the Board. Kohler also declares that Kromenhoek told the Board not to access the paperwork. Koehler further states that the Board did not review or discuss the content of Kromenhoek's paperwork or documentation at that time. Koehler states that the Board was unaware of any request for accommodation by Kromenhoek, and did not review any such request, until March of 2012. Koehler testifies that, in March, 2012, Kromenhoek provided the President of the Board, Ed Wardell, with a letter requesting an accommodation (the "March, 2012, request"). The letter is dated January 12, 2012. It was addressed to the previous President of the Board, Harcourt. The March, 2012, request also included a copy of the letter from Kromenhoek's doctor, and the certifications for Oliver.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 15

The Board and the Association also direct the Court to a
report issued by the United States Department of Housing and
Urban Development ("HUD"). Following the filing of an
administrative complaint by Kromenhoek, HUD conducted an
investigation into Kromenhoek's allegations of discrimination
and issued a report. In its report, HUD stated that
"[Kromenhoek] did not formally request a reasonable
accommodation for her disability until March 2012. In April
2012, upon review of those documents, the [Board] granted the
request." (12-cv-25, ECF No. 188-1.)[6]

The Board also submitted a letter from the president of the
Board which stated that

> [t]he Board of Directors convened a closed door
> meeting on March 26th, 2012 to confidentially
> review [the documents]. After review, the Board
> of Directors has agreed to provide you an
> exemption to the No Dog policy currently in
> place at Cowpet. Thus your request for
> accommodation to allow your service
> animal/emotion [sic] support animals to reside
> at Cowpet Bay West is granted. Furthermore, the
> Board has agreed to waive any fines assessed to
> your unit as a result of the perceived violation
> of the No Dog policy at Cowpet.

(12-cv-25, ECF No. 188-1, Ex. 13.)

---

[6] "As a general proposition, administrative records may be a sufficient basis
for the granting of a motion for summary judgment. *See, e. g.*[sic] *United
States v. Lange*, 466 F.2d 1021, 1025 n. 5 (9th Cir. 1972); *Dredge Corp. v.
Penny*, 338 F.2d 456, 460 (9th Cir. 1964)." *United States v. Pent-R-Books*,
Inc., 538 F.2d 519, 527 (2d Cir. 1976).  That said, the Court recognizes that
it is not bound by any factual finding made by HUD.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 16

        In order to make a claim under the FHA, a plaintiff "must
actually request an accommodation and be refused in order to
bring a reasonable accommodation claim under the FHA." *United
States v. Hialeah Hous. Auth.*, 418 F. App'x 872, 875 (11th Cir.
2011). "[F]or a demand to be specific enough to trigger the duty
to provide a reasonable accommodation, the defendant must have
enough information to know of both the disability and desire for
an accommodation, or circumstances must at least be sufficient
to cause a reasonable landlord to make appropriate inquiries
about the possible need for an accommodation." *Id.* at 876
(internal quotations omitted).

        The evidence indicates that Harcourt and the Board were
aware that documents had been filed with Schechter as early as
2011. (Koehler Decl.) The evidence also indicates that the Board
did not know of the specific contents of those documents,
because Kromenhoek had forbidden the Board from seeing them.
(*Id.*) A request for an accommodation must be reasonably
specific. "The duty to make a reasonable accommodation does not
simply spring from the fact that the handicapped person wants
such an accommodation made. Defendants must instead have ... the
ability to conduct a meaningful review of the requested
accommodation[.]" *Hialeah Hous. Auth.*, 418 F. App'x at 876.
Kromenhoek's initial filing of documents with an individual who

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 17

was not a Board member, and concomitant refusal to allow the Board to see the documents, prevented the Board and the Association from conducting a meaningful review of the accommodation sought.  As such, Kromenhoek's initial filing of her doctor's letter and Oliver's certificates is not a specific request for accommodation, as is required by the FHA.[7]

Thus, the first request for accommodation came in March, 2012. (Koehler Decl.) That request was granted within one month. (12-cv-25, ECF No. 188-1, Ex. 13.)

Even assuming, *arguendo*, that Kromenhoek made a request for a reasonable accommodation in 2011, she must also show that she was denied the reasonable accommodation. *See* 42 U.S.C. § 3604(f)(3)(B).

"In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation." *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1257 (D. Haw. 2003) *aff'd sub nom. DuBois v. Ass'n of Apartment Owners of 2987*

---

[7] This was also the view taken by HUD, when it conducted its investigation into Kromenhoek's FHA complaint.  Specifically, HUD found that, "[w]hile the Complainant informed the Office Manager of the Respondent Association of her disability and need for an emotional support animal in July 2011, she did not formally request an accommodation at that time.  In fact, she asked that the Office Manager keep this information confidential, i.e., that it not be shared with the Board of Directors of the Respondent Association." (Determination of No Reasonable Cause, HUD, Case No. 01-12-0337-8.)

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 18

*Kalakaua*, 453 F.3d 1175 (9th Cir. 2006); *Bronk v. Ineichen*, 54
F.3d 425, 429 (7th Cir. 1995)(stating that allowing a deaf
individual to keep a service dog despite a no-pets policy was
*per se* reasonable).

At least one federal appellate court has acknowledged "that
injury may result when a housing provider unreasonably delays
responding to a request for an accommodation and that such a
delay may amount to a denial." *Overlook Mut. Homes, Inc. v.
Spencer*, 415 F. App'x 617, 622 (6th Cir. 2011). However, a delay
in responding to a request for accommodations does not
constitute denial where the denial does not deprive the disabled
person of the accommodation. *Id.* at 623.

In *Overlook Mutual Homes, Inc. v. Spencer*, the Sixth
Circuit considered an FHA claim involving a request for a
support animal. In that case, Overlook Mutual Homes ("Overlook")
requested medical and counseling records pertaining to the
resident's request for an accommodation. *Id.* at 619. When
Overlook did not receive those records, it indicated to the
requesting residents that Overlook would not review the request
until all documentation had been provided. *Id.* During the delay
in Overlook's response to the resident's request, the service
dog "was allowed to stay with the family, and they were never
required to leave their home or otherwise punished for [the

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 19

dog's] presence." *Id.* at 623. Because the residents were able to use the requested accommodation for the duration, the Sixth Circuit found that their request had not been constructively denied. *Id.*

An alternative approach to that taken in *Overlook* is evident in *Astralis Condominium Assoc. v. Secretary, U.S. Dept. of Housing and Urban Development*, 620 F.3d 62 (1st Cir. 2010). In *Astralis*, the residents requested handicapped parking spaces. *Id.* at 65. For over a year, the association did not take any action on the request. *Id.* While the dispute was ongoing, the residents parked in the desired handicapped spaces. *See id.* However, when they did so, the residents were cited. *Id.*

Here, as in *Overlook*, Kromenhoek had access to the accommodation for the duration of the alleged delay. (Kohler Decl.("The Board never prevented Plaintiff from accessing or using her unit at any time with the accompaniment of her dog.")) Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. (*Id.* ("The Board held all dog violation fines against Plaintiff in abeyance and agreed to waive same in

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 20

March 2012.")) The circumstances here are easily distinguishable
from "*Astralis*, in which a delay in responding to a request was
found to be a denial. In th[at] case[], the delay had the effect
of depriving disabled persons of the accommodation." *Id.* In the
instant matter, Kromenhoek at all times had access to her
emotional support dog and was not punished for the support dog's
presence.  As such, it cannot be said that the alleged delay in
processing her request constituted a refusal to grant her a
reasonable accommodation.

The facts shown by the Association and the Board, unless
controverted, entitle the Association and the Board to judgment
as a matter of law. Therefore, the burden now shifts to
Kromenhoek to show that there is a genuine dispute of material
fact, such that the Association and the Board are not entitled
to summary judgment on Count One.

Kromenhoek claims that she requested an accommodation in
2011.  In support of that contention, she directs the Court to
the affidavit of Louanne Schechter and a copy of a letter from
Kromenhoek's doctor, prescribing her with an emotional support
animal. Schechter states that she received a letter from
Kromenhoek's doctor, prescribing a support animal, and
certifications for Kromenhoek's dog Oliver in October, 2011.
Schechter also avers that she "discussed" the paperwork with her

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 21

supervisor, and that her supervisor then "discussed" the
paperwork with Harcourt, then a member of the Board.  Schechter
avers that Harcourt looked at the documentation. Schechter
states that following those events, she was instructed to place
the paperwork in Kromenhoek's file and take no further action.

On review of the documents provided by Kromenhoek to
Schechter in July, 2011, and the affidavit of Schechter, the
Court considers a few things to be noteworthy.  First, the
letter from Kromenhoek's doctor that was submitted to Schechter
does not appear to request any action.  It merely states that
Kromenhoek has been diagnosed with anxiety, for which the doctor
is prescribing an emotional support dog. Second, the Court notes
that Schechter "discussed" the documents with her supervisor,
who then purportedly "discussed" them with Harcourt.  Kromenhoek
notably has not produced any evidence that the Board was
allowed, at any time, to access these documents.  This is
particularly noteworthy, given Koehler's testimony that
Kromenhoek refused to let the Board look at the documentation.

It is axiomatic that "[t]he duty to make a reasonable
accommodation does not simply spring from the fact that the
handicapped person wants such an accommodation made. Defendants
must instead have ... the ability to conduct a meaningful review
of the requested accommodation[.]" *Hialeah Hous. Auth.*, 418 F.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 22

App'x at 876. Yet, contrary to that axiom, Kromenhoek seems to assert that by providing Schechter with *notice* of her condition, and forbidding Schechter from sharing that notice, Kromenhoek triggered an obligation on the part of the Board: (1) to absorb that information by osmosis; (2) to cast that unshared information as a request for an accommodation; and (3) to assess that nonexistent request. In essence, Kromenhoek invites the Court to find that providing notice of a condition is tantamount to requesting an accommodation for that condition.  The Court must decline that invitation as it is unsupported in law. The circumstances presented by Kromenhoek's wishes and conduct deprived *the Board and the Association* of the opportunity to conduct a meaningful review until March, 2012.  After that review, the Board granted Kromenhoek the accommodation she sought.

Even if the documents Kromenhoek submitted in 2011 could be considered a request for an accommodation, Kromenhoek still would need to show that she was denied such accommodation.  On this issue, Kromenhoek has adduced no additional record evidence.  Instead, she argues that, as a matter of law, the undue delay between her alleged request for accommodation, and the Board's consideration of the same, acted as a constructive denial of her request.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 23

A delay in responding to a request for accommodations does not constitute denial where the denial does not deprive the disabled person of the accommodation. *See Overlook Mut. Homes*, 415 F. App'x at 623.  As discussed above, Kromenhoek was not evicted, or threatened with eviction, and Oliver was at no time forced to leave the premises. Though Kromenhoek received notice that she would be fined per day for having Oliver on premises, she was also informed that all fines would be held in abeyance until the resolution of her request for an accommodation. On these facts, as previously stated, the Court does not find as a matter of law that Kromenhoek was at any time actually denied the accommodation sought.

Because Kromenhoek has failed to show there is any genuine dispute of material fact, such that the Board and Association are not entitled to judgment as a matter of law, summary judgment is appropriate as to Count One.

## B. Count Three: Violation of 42 U.S.C. § 3617 against the Association and the Board; Count Five: Violation of 42 U.S.C. § 3617 against Talkington

Under the Fair Housing Act Amendment ("FHAA"), which Congress passed in 1988 to extend the coverage of the FHA to include people with disabilities, it is unlawful:

> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 24

> encouraged any other person in the exercise or
> enjoyment of, any right granted or protected by
> section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

To prevail on a claim brought under Section 3617, a

plaintiff must show that

> (1) she is a protected individual under the FHA,
> (2) she was engaged in the exercise or enjoyment
> of her fair housing rights, (3) the defendants
> coerced, threatened, intimidated, or interfered
> with the plaintiff on account of her protected
> activity under the FHA, and (4) the defendants
> were motivated by an intent to discriminate.
> *East-Miller*, 421 F.3d at 563. "Interference" is
> more than a "quarrel among neighbors" or an
> "isolated act of discrimination," but rather is
> a "pattern of harassment, invidiously
> motivated." *Halprihn*, 388 F.3d at 330; *cf.*
> *DiCenso*, 96 F.3d at 1006; *Honce v. Vigil*, 1 F.3d
> 1085, 1090 (10th Cir. 1993).

*Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

For purposes of their motions for summary judgment, the

Defendants do not argue or adduce evidence refuting that

Kromenhoek is a protected individual under the FHA, or that, in

having her support dog on the premises, she was engaged in the

exercise or enjoyment of her fair housing rights.  The

Defendants, instead, contend that their behavior did not

"coerce[], threaten[], intimidate[], or interfere[] with the

plaintiff on account of her protected activity under the FHA."

*Bloch*, 587 F.3d at 783.

### 1. Count Three: Violation of 42 U.S.C. § 3617 against the Association and the Board

In Count Three of the Second Amended Complaint, Kromenhoek alleges that the Board and the Association unlawfully retaliated against her for exercising rights protected by the FHA when a resolution was introduced to add a "no pets" policy to the bylaws. Kromenhoek further alleges that the Board distributed confidential medical information to non-members, specifically Talkington, in order to intimidate her or retaliate against her. Finally, Kromenhoek claims that the imposition of a daily fine for having Oliver on the premises constituted impermissible interference. The Board and Association respond that there was no retaliatory action, and that Kromenhoek is trying to use the FHA to settle a "dispute between neighbors."

In support of its motion for summary judgment, the Board and the Association submitted association rules and regulations that have forbidden dogs in general since 2007. The Board and Association submitted the 2007 version of its Bylaws, as well, which incorporate by reference the rules and regulations. The Board and the Association also rely on the declaration of Koehler, which states that the Board did not look at or review Kromenhoek's documentation as to her medical condition or Oliver until March 2012. According to the letter from her doctor that

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 26

Kromenhoek submitted, Kromenhoek was not prescribed an emotional

support dog until 2011.

As to Kromenhoek's claim that the Board and the Association

shared confidential information regarding her request with non-

members, the Defendants rely on the affidavit of Talkington.

Talkington avers that at no time did he receive any medical

records or confidential information from the Board, or any

member of the Board.  He further states that he did not, at any

time, post any of Kromenhoek's medical records or confidential

information online.

The Board and the Association have also submitted

correspondence sent by the Board to Kromenhoek informing

Kromenhoek that: she was in violation of the "no pets" policy,

that a per day fine will be levied, and that such fine would be

held in abeyance pending her filing of a request for an

exemption from the "No Dogs policy," and the Board's review of

such request. The Board also submitted a letter sent by the

Board to Kromenhoek informing her that her request was approved

and that the fines were waived.

These facts, taken together, show that the Association and

the Board did not undertake retaliatory action under Section

1367 based upon Kromenhoek's request for a service dog

accommodation. "To establish a *prima facie* case of retaliation,

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 27

a plaintiff must show that (1) he engaged in a protected

activity; (2) the defendant subjected him to an adverse action;

and (3) a causal link exists between the protected activity and

the adverse action." *Walker v. City of Lakewood*, 272 F.3d 1114,

1128 (9th Cir. 2001).

    As the Board and the Association make no argument as to

whether Kromenhoek's request for an accommodation was a

protected activity, the Court will, for purposes of their motion

for summary judgment on Count Three, consider that issue

conceded.  The Court, thus, considers first if there was an

"adverse action" to which Kromenhoek was subjected.  The Board

and the Association have adduced evidence that neither party

disclosed Kromenhoek's confidential information.  They have also

adduced competent evidence that Kromenhoek was never fined.  As

such, Kromenhoek's allegations that such activities constituted

retaliation must fail as a matter of law.

    Turning to the issue of whether the "No Dogs" policy itself

constituted retaliation, the Court finds the dates of that

activity to be dispositive.  The Board and the Association have

submitted competent evidence that the rules and regulations that

implemented the "No Dogs" policy were passed no later than 2007,

as were the bylaws that incorporated those rules and regulations

by reference. The protected activity that Kromenhoek engaged in,

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 28

seeking an accommodation for her service animal, began no
earlier than 2011.  There is thus no causal link between
beginning the protected activity and the alleged retaliatory
action.

Thus, these facts, unless disputed, entitle the Association
and the Board to judgment as a matter of law. This showing
satisfies the defendants' burden under Rule 56, and the burden
thus shifts to Kromenhoek.

Kromenhoek relies almost entirely on an unverified second
amended complaint. Additionally, she directs the Court's
attention to a blog post written by Talkington stating that
Kromenhoek was being fined for violations of the "No Dog"
policy.  Talkington indicates in his post that he received that
information from the Board.  The email or letter by which he
learned of this action is unknown. More importantly, the source
of the email or letter is unknown.

Assuming, *arguendo*, that this disclosure may be considered
an "adverse action", there must still be some indication that
the complained of action was done in response to the plaintiff's
exercise of her fair housing rights. *See Walker*, 272 F.3d at
1128. The record in this case is replete with complaints from
Talkington, as well as other association members, to the Board
complaining of violations of the "No Dog" policy and demanding

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 29

the Board punish the individuals Talkington identified as
violating the policy. (ECF No. 188-1.) The Board's proof of
action on the "No Dog" policy concerns appears to be nothing
more than that.  The letter itself states that though Kromenhoek
was being fined, it would be held in abeyance pending her
request for accommodation. There is nothing on the record which
supports an inference that the letter's disclosure was done in
retaliation against Kromenhoek's request for accommodation. In
fact, at that time, she had not made such a request.[8]

The Court is thus unable to find proof on the issue of
causation as to the purported disclosure. As to the other
complained of "adverse actions," Kromenhoek has adduced no
additional competent evidence and Kromenhoek relies entirely on
her unverified complaint.  Though the Court may consider
pleadings in reviewing motions for summary judgment, in the face
of competent evidence, a lone unverified pleading simply will
not be enough.

As Kromenhoek has not shown there is a genuine dispute of
material fact, the Court finds that summary judgment is
appropriate as to Count Three.

**2. Count Five: Violation of 42 U.S.C. § 3617 against
Talkington**

---

[8] As discussed above, Kromenhoek did not actually request an accommodation
until March 2012.  The letter the Board allegedly disclosed predates that.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 30

In Count Five, Kromenhoek also claims that Lance Talkington ("Talkington"), another resident of Cowpet Bay West, violated Section 3617. Specifically, she alleges that the blog kept by Talkington constituted harassment that intimidated, threatened, or interfered with her enjoyment of her property. Talkington disputes this characterization of his actions, and contends that Kromenhoek is elevating a simple dispute among neighbors.

In support of his motion, Talkington provided an affidavit, as well as several blog posts in which the issue of pets at Cowpet Bay West was discussed. The Court has carefully looked at and considered Talkington's affidavit and the blog posts attributable to Talkington. There are a number of posts, some of which reference Kromenhoek by name.  The content written by Talkington himself seems geared towards discussing whether dogs should be allowed in the community, and how to best draft a bylaw provision that would allow service animals for the disabled. Talkington proposed incorporating the language used in the Americans with Disabilities Act ("ADA").

Talkington did post a copy of the email sent by Harcourt to Kromenhoek in which Kromenhoek was informed that she was in violation of the "no pets" policy and would need to submit a request to the Board. Talkington also called Kromenhoek a "known violator" of the "no pets" policy.  Finally, Talkington

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 31

disclosed on his blog that he was a named party in Kromenhoek's

administrative complaint to HUD.

A wide range of conduct falls under Section 3617's

umbrella. Indeed,

> Section 3617 is not limited to those who used
> some sort of "potent force or duress," but
> extends to other actors who are in a position
> directly to disrupt the exercise or enjoyment of
> a protected right and exercise their powers with
> a discriminatory animus. Under this standard,
> the language "interfere with" encompasses such
> overt acts as racially-motivated firebombings,
> sending threatening notes, and less obvious, but
> equally illegal, practices such as exclusionary
> zoning, deflating appraisals because of
> discriminatory animus, and insurance
> redlining[.]

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347

(6th Cir. 1994).

Even a broad reading of Section 3617, in order to account

for less obvious but still illegal discrimination, does not make

unfortunate skirmishes between neighbors unlawful. *Bloch v.

Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). Even potentially

discriminatory statements exchanged between neighbors do not

necessarily violate Section 3617. *See Sheikh v. Rabin*, 565 F.

App'x 512, 517-18 (7th Cir. 2014).

In *Sheikh v. Rabin*, 565 F. App'x 512 (7th Cir. 2014), the

Seventh Circuit considered whether statements, including

discriminatory statements, made in opposition to a zoning

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 32

variance and in discussions between neighbors, violated Section

3617. In that case, the plaintiff was a Muslim from South Asia

who sought to build a home and required various zoning

variances. *Id.* at 514-15. He initially sought a variance from

the zoning board. *Id.* at 515. Before a final decision on the

variances was issued, he filed suit against various neighborhood

residents, alleging, in part, violations of Section 3617. *Id.*

Those neighborhood residents had opposed the requested

variances and made a number of potentially discriminatory

statements. *See id.* at 517-18.

> [One neighbor] once told [the plaintiff] that
> the subdivision is "all white" and that he did
> not think [the plaintiff] would "fit in." The
> neighbors sometimes referred to [the plaintiff]
> and his family at [public] meetings as "you
> people," and [a neighbor] suggested he move
> somewhere else, closer to his "people." At one
> meeting, [a neighbor] displayed pictures of
> narrow houses in poor countries, sarcastically
> suggesting that the pictures supported the
> conclusion that a narrow house should be enough
> for [the plaintiff]. Another time, some of the
> neighbors (he does not specify who) expressed
> worry that [the plaintiff] would allow more than
> one family to live in his house. (His two adult
> children will live in the house with him and his
> wife.) These neighbors talked about other areas
> in which one "colored family" moving in was a
> prelude to being "flooded by them" and about how
> some single-family homes rented by "latinos and
> blacks" ended up housing multiple families. [The
> plaintiff] also alleges that [a neighbor] said
> something threatening about the house burning
> down if it is built. (Though accepting as true
> that [that neighbor] said something threatening,
> [the judge] noted that the allegations are

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 33

> fuzzy. [The plaintiff]'s appellate brief hardly
> clarifies matters; he maintains that, whatever
> [the neighbor] said, it was threatening, but he
> explains that he "can merely speculate on that
> threat" since only [the neighbor] knows "his
> true intent.")

*Id.* Based on these facts, the district court held that the
plaintiff's allegations described "a 'quarrel among neighbors'
that involved, at most, 'isolated acts of discrimination'" and
did not violate 42 USC 3617. *See Sheikh v. Rabin*, No. 11-CV-425,
2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012). The Seventh
Circuit affirmed, holding that "taken together, the[]
allegations would establish only that different neighbors at
different times made shameful statements, not that any
individual neighbor (or the neighbors as a group) interfered
with [the plaintiff]'s rights under the Fair Housing Act."
*Sheikh*, 565 F. App'x at 518.

The conduct at issue in this case pales in comparison to
that seen in *Sheikh*. A review of Talkington's blog posts and
comments attributable to Talkington does show that he was
certainly not friendly with Kromenhoek. None of those comments
or posts, however, rises to the level of interference and
threatening behavior seen in *Sheikh*, where one of the
plaintiff's neighbors "said something threatening about the
house burning down if it is built." *See id.* at 517-18.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 34

Talkington has shown competent evidence that the behavior complained of in this case does not rise to the level of "interference" with Kromenhoek's rights under the FHA.  Such facts, if uncontroverted, entitle him to judgment as a matter of law and meet his burden under Rule 56.

Once a movant meets the burden of Rule 56, the burden shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans*, 762 F.2d at 342. The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga*, 934 F.2d at 500. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Kromenhoek does not dispute any facts adduced by Talkington. Instead, she argues that as a matter of law, these posts amount to harassment that intimidates or interferes with Kromenhoek's enjoyment of her property.

As discussed above, here the facts are less extreme even than those in *Sheikh*. Though Talkington's blog may have bothered Kromenhoek, there is no record evidence that she was forced to see it.  There were no threats made against Kromenhoek.  There is no allegation that she was followed or otherwise harassed in person. This was a dispute over what the specific rules should

be regarding the keeping of dogs in Cowpet Bay West, with discussions ongoing between neighbors who had no influence on whether or not Kromenhoek could actually keep her dog at her residence.

Though finding the line may at times be difficult, the Court believes that what occurred in this instance as between Kromenhoek and Talkington is more correctly characterized as a dispute between neighbors, not unlawful discrimination.

Kromenhoek has, thus, failed to meet her burden. As such, considering there is no genuine dispute of material fact and Talkington is entitled to judgment as a matter of law, the Court finds summary judgment is appropriate as to Count Five.

## C. Count Six: Americans with Disabilities Act Against the Association and the Board

In Count Six, Kromenhoek alleges that the Board and the Association violated her rights under the Americans with Disabilities Act ("ADA") by improperly enforcing a "no dogs" policy against her.

> Under Title III of the ADA, it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. 12182(a). "Public accommodation" is defined in terms of 12 categories, which the legislative history indicates "should be construed liberally" to afford people with disabilities "equal access" to the wide variety of establishments available to the nondisabled. S.Rep. No. 101-116, p. 59 (1989);

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 36

> H.R.Rep. No. 101-485, pt. 2, p. 100 (1990), U.S.Code
> Cong. & Admin. News 1990, pt. 2, at pp. 303, 382-283.
> The ADA obligates a "public accommodation" only with
> respect to a "facility" that is "used as, or designed
> or constructed for use as," either a place of public
> accommodation or a commercial facility. 28 C.F.R. §
> 36.102(b)(3)(i)-(ii).

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*,

458 F.3d 159, 164 (3d Cir. 2006).[9]

The United States Court of Appeals for the Third Circuit

has explained that

> The regulations under the statute provide that
> discrimination is prohibited by any private entity
> that owns, leases (or leases to) or operates a place
> of public accommodation, 28 C.F.R. § 36.201(a), and
> that "private entity" means a person or entity other
> than a public entity. 28 C.F.R. § 36.104.

--------

[9] The ADA provides that

> The following private entities are considered public
> accommodations for purposes of this subchapter, if the
> operations of such entities affect commerce--
>
> (A) an inn, hotel, motel, or other place of lodging,
> except for an establishment located within a building that
> contains not more than five rooms for rent or hire and
> that is actually occupied by the proprietor of such
> establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food
> or drink;
>
>                         . . . .
>
> (J) a nursery, elementary, secondary, undergraduate, or
> postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless
> shelter, food bank, adoption agency, or other social
> service center establishment; and
>
> (L) a gymnasium, health spa, bowling alley, golf course,
> or other place of exercise or recreation.

42 U.S.C. § 12181(7).

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 37

*Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).

"[C]ondominium buildings may be covered as places of public accommodation if they operate as places of lodging. Determining whether a particular condominium facility is a place of public accommodation would depend on the extent to which it shares characteristics normally associated with a hotel, motel or inn." Department of Justice Public Letter 202-PL-216 (Aug. 28, 1992); *see also Regents of Mercersburg College v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 (3d Cir. 2006) (finding that private-school dormitories are places of "public accommodation" under the ADA because they are more similar to "transient lodging" like "inns, hotels, and motels – which are covered" by the ADA, and less like "residential units such as apartments and condominiums – which are not covered by the ADA . . ."); *Access 4 All, Inc. v. Atlantic Hotel Condominium Ass'n, Inc.*, 2005 WL 5643878, *13 (S.D. Fla. Nov. 23, 2005) (finding that the hotel and condominium structure "was designed and intended for use as a public accommodation because individual unit owners who purchased a unit were likely to rent out the unit for public use," and was "virtually indistinguishable from a hotel.")

The Board and the Association seek summary judgment on Count Six on the basis that Cowpet Bay West is not a "public accommodation," and that they are, therefore, exempt from the

ADA. "[R]esidential units such as apartments and
condominiums[,]" are generally exempt from the ADA. *See Regents
of Mercersburg Coll.*, 458 F.3d at 165. In support of their
contention that Cowpet Bay West is not a public accommodation
within the ambit of the ADA, the Board and the Association have
submitted the bylaws of Cowpet Bay West.  Those bylaws, in
Article V, Section 11, state that "[t]he apartment units shall
be used for residences only."

Having provided competent evidence to meet their burden
under Rule 56, the burden shifts to Kromenhoek.  Kromenhoek
directs the Court to a copy of a webpage on which a unit owner
put their unit up for temporary rental.  This single
advertisement, Kromenhoek argues, shows that individual unit
owners are likely to rent out their units, and that Cowpet Bay
West is similar to a hotel. The Court is not persuaded by this
argument.  A single advertisement from one unit owner does not
show that other owners are "likely to rent out the unit for
public use," such that Cowpet Bay West is "virtually
indistinguishable from a hotel." *Access 4 All, Inc.*, 2005 WL
5643878, *13.

Considering the evidence adduced, the Court finds that the
Board and the Association have shown that there is no dispute as

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 39

to material fact and that they are entitled to judgment as a
matter of law on Count Six.

### D. Remaining Counts against the Board, the Association, Verdiramo, Cockayne, and Talkington

Counts Seven through Eighteen each allege claims arising
under local laws (the "local claims"). Those claims are subject
to different jurisdictional considerations, which may affect
their viability in this Court.  In order to assess
jurisdictional viability of the local claims, a brief overview
of the subject-matter jurisdiction of this Court is in order.

Federal district courts are courts of limited jurisdiction.
Ordinarily, a district court has original jurisdiction over
"civil actions arising under the Constitution, laws, or treaties
of the United States." 28 U.S.C. § 1331 ("federal question
jurisdiction").  District courts also have original jurisdiction
over civil actions between citizens of different states with the
amount in controversy exceeding the sum or value of $75,000. 28
U.S.C. § 1332 ("diversity jurisdiction"). The Supreme Court has
"interpreted the diversity statute to require 'complete
diversity' of citizenship." *C.T. Carden v. Arkoma Assoc.*, 494
U.S. 185, 187 (1990). That means "every plaintiff must be of
diverse state citizenship from every defendant." *In re Briscoe*,
448 F.3d 201, 215.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 40

Where a case is properly brought in the district court pursuant to the Court's federal question jurisdiction or diversity jurisdiction, the Court may have jurisdiction over local claims that arise out of the same case or controversy as those underlying the federal claims (supplemental jurisdiction). 28 U.S.C. § 1367.

The complaint in this matter names a plaintiff that is a citizen of the Virgin Islands, Kromenhoek, and a defendant that is a citizen of the Virgin Islands, Cowpet Bay West. As such, the case could not be brought in this Court pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. Instead, Kromenhoek brought her complaint in this Court pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, as the FHA and ADA claims arise under the laws of the United States. Those claims, as discussed above, have been disposed of as a result of the Defendants' motions for summary judgment.

The local claims against the Board, the Association, Verdiramo, Cockayne, and Talkington may be heard only if the Court exercises its supplemental jurisdiction over those claims. That exercise is not a foregone conclusion.

Indeed, "district courts may decline to exercise supplemental jurisdiction over a claim . . . if--(1) the claim raises a novel or complex issue of State law,(2) the claim

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 41

substantially predominates over the claim or claims over which the district court has original jurisdiction,(3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367.

With the disposition of the federal claims in this case, the Court's exercise of jurisdiction over the local claims is discretionary.  Exercising that discretion, the Court will decline jurisdiction over the remaining local claims. *See, e.g.,* B*orough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]")

## V. <u>CONCLUSION</u>

For the reasons discussed herein, the Board, the Association, and Talkington are entitled to judgment as a matter of law on Counts One, Three, Five, and Six. The Court will decline to exercise its supplemental jurisdiction over local

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 42

counts, Seven through Eighteen, as against the Board, the

Association, Talkington, Verdiramo, and Cockayne, as no federal

counts remain as against any of said defendants.[10]

An appropriate Judgment follows.

S_____

**Curtis V. Gómez**
**District Judge**

_____

[10] The Court does not address any of the claims, federal or local, as against Harcourt or Felice in this Memorandum Opinion. Such claims are the subject of a separate, forthcoming opinion.