```
              DISTRICT COURT OF THE VIRGIN ISLANDS
                DIVISION OF ST. THOMAS AND ST. JOHN

                                       )
JUDITH KROMENHOEK,                     )
                                       )
            Plaintiff,                 )
                                       )     Civil No. 2012-25
            v.                         )
                                       )
COWPET BAY WEST CONDOMINIUM            )
ASSOCIATION; THE BOARD OF THE          )
COWPET BAY WEST CONDOMINIUM            )
ASSOCIATION; MAX HARCOURT, in          )
his personal capacity; ALFRED          )
FELICE; LANCE TALKINGTON; ROBERT       )
COCKAYNE; and VINCENT VERDIRAMO,       )
                                       )
            Defendants.                )
                                       )
```

**ATTORNEYS:**

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
    *For Judith Kromenhoek,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
    *For Cowpet Bay West Condominium Association, Ed Wardwell,*
    *Max Harcourt, Bill Canfield, Rosie Wells, Sharon Koehler,*
    *Doug Rebak, Robert Cockayne, Vincent Verdiramo, and Herb*
    *Horwitz,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
    *For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
   *For Alfred Felice.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court are the claims alleged by Judith Kromenhoek against the deceased defendants, Alfred Felice ("Felice") and Max Harcourt ("Harcourt").

### I. FACTUAL AND PROCEDURAL BACKGROUND

Judith Kromenhoek ("Kromenhoek") owns a unit in the Cowpet Bay West Condominium complex ("Cowpet"), a condominium community located on St Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association ("the Association") was formed under the Condominium Act of the Virgin Islands (the "Condominium Act"), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to

---

[1] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

*Kromenhoek v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-25
Memorandum Opinion
Page 3

the Association's Declaration,[2] Bylaws, and its Rules and Regulations.[3]

Association members elect a Board of Directors ("the Board"). The Board is made up of seven Association members. The Bylaws provide that the Board has

> the powers and duties necessary for the administration of the affairs of the Condominium and may do all such acts and things except as by law, by the Declaration, or by [its] By-Laws may not be delegated to the Board of Directors by the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of Rules and Regulations by the Board. At all relevant times, the Rules and Regulations for Association members provide the following:

> Dogs and farm animals are prohibited. Owners will be fined as specified by the Board of Directors. The Association may require removal

---

[2] "'Declaration' means the instrument by which the property is submitted to the provisions of this chapter, as hereinafter provided, and such declaration as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and the administrative rules and regulations adopted pursuant thereto, as either of the same may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment. Failure to comply with any of the same shall be ground for an action to recover sums due, for damages or injunctive relief or both maintainable by the manager or Board of Directors on behalf of the Association of Apartment Owners or, in a proper case, by an aggrieved apartment owner.

28 V.I.C. § 906.

Case: 3:12-cv-00025-CVG-RM   Document #: 235   Filed: 12/24/14   Page 4 of 19

Kromenhoek v. Cowpet Bay West Condominium Association, et al.
Civil No. 2012-25
Memorandum Opinion
Page 4

>       of any animal when it becomes bothersome to
>       others or is deemed by the Association to be
>       unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about December 15, 2010, Stansford S. Sutherland ("Sutherland")[4], "a licensed psychologist wrote a letter stating that he was treating Kromenhoek and that she was diagnosed with Anxiety Disorder . . . ." (Second Am. Compl. ¶ 30, Civil No. 2012-25, ECF No. 94.) In his letter, the psychologist stated "that he has prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms and that such emotional support animal was necessary. (*Id.*)

Kromenhoek owned a dog named Oliver. Kromenhoek submitted information about her dog's qualification as an emotional support animal to Louanne Schecter ("Schecter"), the Cowpet Office Manager, including the letter from Sutherland.

Thereafter, members of the Board held a public meeting during which the issue of service dogs was discussed. Kromenhoek alleges that Max Harcourt ("Harcourt"), then President of the Association, shared the content of her documents with some of the Association members. (Second Am. Compl. at ¶ 43, Civil No. 2012-25, ECF No. 94.)

---

[4] Although Kromenhoek's Second Amended Complaint states that Stansford S. Sutherland wrote the December 15, 2010, letter, the letter attached to Kromenhoek's Second Amended Complaint dated December 15, 2010, regarding a diagnosis of anxiety disorder, is signed by Timothy Livingood.

Subsequently, discussions on Kromenhoek's pet ownership appeared on an Internet web log, the Cowpet Bay Blog ("the blog"). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.)

Kromenhoek alleges that, on or about October 28, 2011, Harcourt e-mailed a letter addressed to Kromenhoek's e-mail address as well as to Talkington's e-mail address. The letter stated that Kromenhoek had violated the "no dogs" policy contained in the Rules and Regulations. The letter also requested that Kromenhoek submit applications for reasonable accommodation.

On or about January 19, 2012, the Board met and voted to assess a fine of $50 per day against owners, including Kromenhoek, who were in violation of the "no dogs" policy. Thereafter, in February, 2012, the Association voted to add the "no dogs" policy to the Bylaws. The newly added bylaw contained no explicit exception for service animals permitted by the Fair Housing Act ("FHA").

Based on this policy, fines were assessed against Kromenhoek. These fines were held in abeyance. Kromenhoek was subsequently granted an exemption from the "no dogs" policy and was not required to pay the fines.

On April 9, 2012, Kromenhoek initiated this action against the Association; the Board; the members of the Board, including Harcourt, in their capacity as Board members; Harcourt, in his personal capacity; Lance Talkington ("Talkington"); Felice; Robert Cockayne ("Cockayne"); and Vincent Verdiramo ("Verdiramo"). Thereafter, Kromenhoek amended her complaint once as a matter of right. After receiving leave of court, she then filed another amended complaint (the "Second Amended Complaint"). The second amended complaint includes as defendants the Association; the Board; Harcourt, in his personal capacity; Felice; Lance Talkington; Cockayne; and Verdiramo.

Subsequently, the Board, the Association, and Talkington filed motions seeking summary judgment on the federal law claims then-pending against those defendants. Cockayne and Verdiramo also filed motions seeking summary judgment on state law claims. At a May 27, 2014, hearing (the "May 27, 2014, hearing"), the Court granted summary judgment on all federal law claims asserted against all living defendants in the Second Amended Complaint, including the Board. The Court declined to exercise supplemental jurisdiction over the remaining state law claims pending against those defendants.

The Court also instructed the parties to submit any necessary additional information for the Court to resolve the

claims against the deceased defendants--Felice and Harcourt. The Court directed the parties to apprise the Court of any necessary procedural steps that the Court needed to take with regard to the deceased defendants, as well as the substantive effect of the Court's summary judgment rulings with regard to the deceased defendants.

On November 14, 2014, the Court held a status conference, which was attended by Kromenhoek's attorney and attorneys who had represented the deceased defendants prior to those defendants' deaths. At that status conference, the Court informed Kromenhoek's attorney that the Court was considering entering summary judgment *sua sponte* in favor of the deceased defendants. The Court then provided the plaintiff with an opportunity to respond or otherwise supplement the record in light of the Court's inclination to grant summary judgment. To date--more than thirty-nine days since the Court invited the plaintiff to respond--the plaintiff has not filed any briefs or supplemented the record.

## II. DISCUSSION

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

In considering whether there is a genuine issue of fact on these issues, the Court may consider the pleadings, the

discovery and disclosure materials on file, and any affidavits. *See* Fed. R. Civ. P. 56(c).

### III. ANALYSIS

1. *Sua Sponte* Summary Judgment

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 1986).

"Under [Third Circuit precedent], a district court may not grant summary judgment sua sponte unless the court gives notice and an opportunity to oppose summary judgment." *See Otis Elevator Co. v. George Washington Hotel Corp.* 27 F.3d 903 (3d Cir.1994) (citing *Davis Elliott Intern. v. Pan American Container,* 705 F.2d 705, 707–08 (3d Cir.1983)). Notice requires that "the targeted party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004)(quoting *Leyva v. On the Beach, Inc.,* 171 F.3d 717, 720 (1st Cir.1999) (internal citations omitted)).

At the end of the May 27, 2014, hearing, the Court instructed the parties to submit any necessary information for

the Court to resolve the claims against Felice and Harcourt. The Court stated that it was interested in both any necessary procedural steps and the substantive effect of the Court's summary judgment rulings. Furthermore, on November 14, 2014, the Court expressly informed Kromenhoek's attorney that it was considering *sua sponte* granting summary judgment on behalf of the deceased defendants and provided Kromenhoek with an opportunity to respond. To date, Kromenhoek has not availed herself of that opportunity. As such, the Court may enter summary judgment *sua sponte* on these claims if the facts and the law support such an outcome. *See Gibson*, 355 F.3d at 223. The Court will assess whether summary judgment is appropriate as to each of these claims.

### 2. 42 U.S.C. § 3617 Claims

#### A. **Felice**

Pursuant to Title 42, U.S.C. § 3617 ("Section 3617"), it is unlawful to

> coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. To prevail on a Section 3617 claim, a plaintiff must show that:

Case: 3:12-cv-00025-CVG-RM   Document #: 235   Filed: 12/24/14   Page 11 of 19

Kromenhoek v. Cowpet Bay West Condominium Association, et al.
Civil No. 2012-25
Memorandum Opinion
Page 11

> (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. *East-Miller*, 421 F.3d at 563. "Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated." *Halprihn*, 388 F.3d at 330; *cf*. *DiCenso*, 96 F.3d at 1006; *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993).

*Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

A wide range of conduct falls under Section 3617's umbrella. Indeed,

> Section 3617 is not limited to those who used some sort of "potent force or duress," but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus. Under this standard, the language "interfere with" encompasses such overt acts as racially-motivated firebombings, sending threatening notes, and less obvious, but equally illegal, practices such as exclusionary zoning, deflating appraisals because of discriminatory animus, and insurance redlining[.]

*Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994).

Even reading Section 3617 broadly, in order to account for less obvious but still illegal discrimination, unfortunate skirmishes between neighbors are not made unlawful. *Bloch*, 587 F.3d at 783. Even discriminatory statements exchanged between

neighbors do not necessarily violate Section 3617. *See Sheikh v. Rabin*, 565 F. App'x 512, 517-18 (7th Cir. 2014).

In *Sheikh v. Rabin*, the Seventh Circuit considered whether statements, including discriminatory statements, made in opposition to a zoning variance and in discussions between neighbors, violated Section 3617. In that case, the plaintiff was a Muslim from South Asia who sought to build a home and required various zoning variances. *Id.* at 514-15. He initially sought a variance from the zoning board. *Id.* at 515. Before a final decision on the variances was issued, he filed suit against various neighborhood residents, alleging, in part, violations of Section 3617. *Id.*

Those neighborhood residents had opposed the requested variances and made a number of discriminatory statements. *See id.* at 517-18.

> [One neighbor] once told [the plaintiff] that the subdivision is "all white" and that he did not think [the plaintiff] would "fit in." The neighbors sometimes referred to [the plaintiff] and his family at [public] meetings as "you people," and [a neighbor] suggested he move somewhere else, closer to his "people." At one meeting, [a neighbor] displayed pictures of narrow houses in poor countries, sarcastically suggesting that the pictures supported the conclusion that a narrow house should be enough for [the plaintiff]. Another time, some of the neighbors (he does not specify who) expressed worry that [the plaintiff] would allow more than one family to live in his house. (His two adult

> children will live in the house with him and his wife.) These neighbors talked about other areas in which one "colored family" moving in was a prelude to being "flooded by them" and about how some single-family homes rented by "latinos and blacks" ended up housing multiple families. [The plaintiff] also alleges that [a neighbor] said something threatening about the house burning down if it is built. (Though accepting as true that [that neighbor] said something threatening, [the judge] noted that the allegations are fuzzy. [The plaintiff]'s appellate brief hardly clarifies matters; he maintains that, whatever [the neighbor] said, it was threatening, but he explains that he "can merely speculate on that threat" since only [the neighbor] knows "his true intent.")

*Id.* Based on these facts, the district court held that the plaintiff's allegations described "a 'quarrel among neighbors' that involved, at most, 'isolated acts of discrimination'" and did not violate 42 USC 3617. *See Sheikh v. Rabin*, No. 11-CV-425, 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012). The Seventh Circuit affirmed, holding that "taken together, the[] allegations would establish only that different neighbors at different times made shameful statements, not that any individual neighbor (or the neighbors as a group) interfered with [the plaintiff]'s rights under the Fair Housing Act. *Sheikh*, 565 F. App'x at 518.

Here, Felice expressed his support for the no-dogs policy via email and stated that any need for service dogs should be proven. (Email Dated December 2, 2011, Civil No. 12-25, ECF No.

202-21, pg. 1.) He stated that he did not trust the word of residents or private physicians. *Id.* He also posted on the blog that individuals could game the system and acquire service dogs by finding a friendly physician or by paying a minimal fee on the internet and expressed his belief that the disability laws are abused. (Comment on October 13, 2011, Blog Entry, Civil No. 12-25, ECF No. 202-11, pg. 2.) In addition, Felice suggested more than once that violators of the no-dogs policy should be ostracized from the community and also suggested that their establishments should not be patronized. (*See, e.g.,* Email Dated January 16, 2012, Civil No. 12-25, ECF No. 205-8, pg. 1; *see also* Comment on March 17, 2012, Blog Entry, Civil No. 12-25, ECF No. 202-6, pg. 3; Comment on December 5, 2011, Blog Entry, Civil No. 12-25, ECF No. 205-6, pg. 11.)

Furthermore, Felice expressed his opposition to Kromenhoek's candidacy for the Board because she had a dog. Felice also opposed the candidacy of another candidate that he viewed as Kromenhoek's "shill." (*See, e.g.,* Comment on December 5, 2011, Blog Entry, Civil No. 12-25, ECF No. 202-6, pg. 5.) He also attempted to gain support for electing candidates that would enforce the no-dogs policy. (*See, e.g., id.*) The language Felice used was arguably cruel and insensitive, but cruel and

insensitive statements do not necessarily give rise to Section 3617 claims.

The Court will first address whether ostracizing a neighbor can violate Section 3617. Other courts have considered this issue. *See, e.g., Sporn v. Ocean Colony Condo. Ass'n,* 173 F. Supp. 2d 244, 247 (D.N.J. 2001). In *Sporn v. Ocean Colony Condo Association*, the "[d]efendants allegedly . . . engag[ed] in a campaign to discredit the plaintiffs with other unit owners and shunning and ostracizing [the p]laintiffs." *Id.* at 247. The court in *Sporn* held that Section 3617 does not "impose a code of civility on those dealing with individuals who have exercised their FHA rights." *Id.* at 251. Thus, the statute "does not require that neighbors smile, say hello or hold the door for each other." *Id.* Based on that reasoning, the court held that "'shunning' is not the kind of behavior that interferes with [42 U.S.C. 3617] rights." *Id.* "To hold otherwise would be to extend § 3617 to conduct it was never intended to address and would have the effect of demeaning  the aims of the Act and the legitimate claims of plaintiffs who have been subjected to invidious and hurtful discrimination and retaliation in the housing market." *Id.* at 251-52.

The Court finds the *Sporn* decision to be persuasive. Although one might hope that neighbors would not ostracize each

other in this manner, it is obvious to the Court that Section 3617 does not place on neighbors an affirmative duty to interact in a friendly manner with other neighbors with differing views and needs. Accordingly, Felice's suggestion that the community ostracize dog owners, including Kromenhoek, or boycott business establishments, does not violate Section 3617.

As to Felice's other statements, the Court is guided by the Seventh Circuit's opinion in *Sheikh v. Rabin*. In that case, neighbors sought to deny the plaintiff zoning variances. Over the course of the dispute those neighbors made shameful and discriminatory comments. Similarly, here, the competent record evidence shows that Felice sought a strictly enforced no-dog policy and attempted to secure the election of Board members who would support the policy he desired. Over the course of the dispute, he expressed skepticism that Kromenhoek was truly entitled to a service dog, opined that the FHA was a bad law, and was generally insulting to Kromenhoek.

Like the comments in *Sheikh v. Rabin*, Felice's comments were regrettable. Nevertheless, consistent with the Seventh Circuit's decision in *Sheikh v. Rabin*, this Court holds that Felice's conduct is better characterized as a quarrel between neighbors or isolated acts of discrimination than conduct violating Section 3617.

### B. Harcourt

In Count Two of the Second Amended Complaint ("Count Two"), Kromenhoek alleges that Harcourt, in his personal capacity, unlawfully interfered with Kromenhoek's exercise of her FHA-protected rights when he ignored her request for a reasonable accommodation and pushed a resolution to add a "no pets" policy to the bylaws. Kromenhoek further alleges that Harcourt distributed confidential medical information to non-members, specifically Talkington, in order to intimidate her or retaliate against her. Finally, Kromenhoek claims that by accusing her of violating the "no dogs" policy and imposing a daily fine for having Oliver on the premises, Harcourt unlawfully retaliated against her.

Identical allegations were levelled against the Association and the Board in Count Three of the Second Amended Complaint ("Count Three"). Indeed, Harcourt was a member of the Board and the conduct alleged in Count Two was, in part, the basis for the Section 3617 claim alleged against the Board in Count Three.

In the Court's December 24, 2014, memorandum opinion the Court found that there was no genuine dispute as to facts material to Count Three. Accordingly, the Court held that the Association and the Board did not undertake retaliatory action

under Section 3617, and granted the Board's motion for summary judgment on Count Three.

Despite the Court's invitation to do so, Kromenhoek has not supplemented the factual record. Thus the factual record before the Court is identical to the factual record that was before the Court when it granted summary judgment in favor of the Association and the Board on the Section 3617 claim against those organizations.

In Count Two, these allegations are levelled against Harcourt in his personal capacity rather than attributed to the Board as a whole. Nevertheless, because the factual record has not been supplemented, there remains no genuine dispute as to any material fact. Accordingly, for the reasons stated in the December 24, 2014, memorandum opinion, Harcourt is also entitled to summary judgment in his favor on the Section 3617 claim alleged against him in his personal capacity.

### 3. State Law Claims Against Harcourt and Felice

Only state law claims remain pending against Harcourt and Felice. For the reasons previously stated in the Court's December 24, 2014, memorandum opinion, the Court will decline to exercise supplemental jurisdiction over those claims. Accordingly, the state law claims asserted against Felice and Harcourt are dismissed.

## IV. CONCLUSION

For the reasons discussed herein, Harcourt and Felice are entitled to judgment as a matter of law on Counts Two and Four. The Court will decline to exercise its supplemental jurisdiction over local counts pending against Harcourt and Felice, Counts Ten, Thirteen, Fifteen, Sixteen, and Seventeen, as no federal counts remain as against any of said defendants.

An appropriate Judgment follows.

S\_____
**Curtis V. Gómez**
**District Judge**